

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
~~XXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

*Superseded by art 29d V.C.S.*

Hon. L. A. Woods
State Superintendent of
Public Instruction
Austin, Texas

Opinion No. O-2892

Re: Correction of scholastic census rolls by State Superintendent of Public Education.

Dear Sir:

We are in receipt of your request for an opinion by this Department dated November 12, 1940, which reads in part as follows:

"Please be referred to Section Five of the Constitution of the State of Texas, also Article 2663, Article 2665, Article 2685, Article 2816, Article 2817, Article 2817A, Article 2819, and Article 2820.

"The school census of Texas is taken annually during the month of March as of the first day of April by authorized agencies of the State termed enumerators. The family blanks provided for the purpose of enumerating children in school census have just above the signature of the parents a form affidavit stating that the facts contained in said enumeration are true and correct and the children were residents in the district on the first of April.

"This enumerator delivers his report to the County School Superintendent who compiles the report for the entire county. First, all those common school districts are contained in one roll alphabetically arranged. All the rolls for each independent district are typed and the names are sent to the State Superintendent for that particular district through the County Superintendent's affidavit and report. The State Superintendent acting under the authority of Article 2820 checks, through his Division of Census and Transfers, these rolls for duplications, underages, overages, and fraudulent names.

"The method used in checking the overages is to compare the data of preceding years as furnished to the State by the County with the information furnished by the same County for the current year.

"Each name of the scholastic presented as seventeen for the year 1940-1941 for approval by the State Superintendent is checked against the scholastic census rolls of 1929 which began the scholastic age of all of said pupils enumerated as seventeen in 1940.

"Quite frequently it is found that children were enumerated as seven and eight years of age in 1929 but only sixteen or seventeen years in 1940 which is a mathematical impossibility and a biological pervert.

"The affidavit of the district and the affidavit of the county presented to the State for its approval in 1929 recited the fact that the children were eligible scholastics of specific ages. All facts were sworn to, and the State acting and taking these affidavits in good faith paid the per capita apportionment to the county and to the district for the amount of apportionment for that scholastic year. An exact case is presented for your consideration:

"Rosaria Badilla living in Edinburg School District and rendered by Carmen Badilla, the Mother, was presented for payment in 1929 of the State Per Capita Apportionment as being eight years of age. Eleven years later, 1940, Rosaria Badillo is presented for payment from Edinburg by her Father, Jose Badillo, as being seventeen years of age.

"Another specific example is Teresa Moltos presented in 1929 from Edinburg for per Capita payment of school funds by Luis G. Moltos, the district and the county as being nine years of age. In 1940 the same child, by the same parent, in the same town and county is presented as seventeen years of age.

"The State has prior to 1929 paid per capita on some of these names, and surely paid it in 1929. Eleven years later the same names are being requested to be approved for payment.

"It appears to the State in line with administrative policy that the children should grow one year for each year of scholastic payments, in which case the first child spoken of in this statement would have been nineteen years of age and out of the scholastic age, and the last child spoken of would have been twenty years of age and out of the scholastic age.

        In order that the facts and your departmental practice might be fully presented, we requested additional information which you furnished in your letter of November 29th, as follows:

        "In answer to your inquiry as to the policy of the Census Division in the Department of Education relative to the checking of scholastic names offered in the census, please be advised that one part of the checking process is the comparison of ages submitted in the roll for the current scholastic year against the entry of the children into the scholastic census rolls up through 1929 as seven years of age making an eleven year spread for this current year. The current names are checked against the names offered for the year 1929 and if the age was shown to be seven in 1929, both lines upon which the names appear are copied and sent to the county school superintendent of the county being checked for his action with the request for action in the following language:

        "'Where we have listed children's names under the heading '1929-1930 vs 1940-1941' it indicates these children have been on the census rolls for a period of eleven years or longer. Our opinion is that children enumerated in 1929-1930 should not have been enumerated again in 1940-1941 regardless of the parents' claims concerning these children's ages.'

        "'Please strike from this report those names which are duplicates and overages and return this list to us as soon as possible.'

        "When this listing is returned to us with the county superintendent's action, if the matter has been fairly considered in our judgment, we take the county superintendent's action as final.

        "But if in our opinion no action was taken and no consideration given to the information submitted to the county superintendent, the State Superintendent, acting through his Division of Census, refuses those names which have the appearance in the make up of the lines of submitted information of being identities.

        "That is, we require the district to be the same district, the parents to be the same parents, and the children's names must be the same.

"This list of refusals is then sent to the
county superintendent and if he objects to the
refusal of any one of the particular names, he is
permitted to submit to the Division of Census jus-
tification for a reinstatement.  In the process of
discovering whether the names should be reinstated
at the request of the unit or the county the names
are checked for each one of the eleven years to
see that the State has completely paid a series of
payments covering the eligibility of a scholastic
between the ages of seven and eighteen.  The stat-
ute covering the entry of scholastics of the year
1929 covers the entry of children at seven to
eighteen.

"If after the children have been checked and
found to have been fully paid on the basis of State
Apportionment considering the date of entry into
the census roll, the State refuses to make a per
capita distribution on these children."

You request that we advise you whether your Department
may correct these matters and approve them based upon original
data submitted by the parent, the district and the county or
should the State continue the payment on these scholastics so
long as the parent, the district, and county care to report their
ages as being less than eighteen.  Since your departmental prac-
tice of making corrections as outlined above and refusing to ap-
prove further payments to the same unit or county after eleven
full annual payments have been made on a particular child, you
also desire our opinion upon the legality of your action.

You further state that your present departmental pol-
icy and method of eliminating this type of error was established
as a result of cooperation and consultation with a Senate Inves-
tigating Committee in 1934, authorized to investigate irregulari-
ties of State Government.  This Committee conducted an investi-
gation into the scholastic census and its report may be found
in Senate Journal, 44th Leg., Regular Session, p. 430, et seq.
The report discusses several cases where excess scholastics were
found to have been included in the census rolls by one device or
another, and had been for many years.  As before mentioned, your
present method of handling the difficulty presented in your re-
quest was worked out at that time.

Article 7, Section 5 of the Texas Constitution, which
provides for the permanent and available school funds, contains
the following provisions:

". . . and the available school fund shall be
applied annually to the support of the public free

schools.  And no law shall ever be enacted appropriating any part of the permanent or available school fund to any other purpose whatever; . . . and the available school fund herein provided shall be distributed to the several counties according to their scholastic population and applied in such manner as may be provided by law."

In order that such fund may be apportioned upon the basis of scholastic population the Legislature has defined the scholastic age, (Art. 2902, R.C.S., 1925, as amended; Love v. City of Dallas, 40 S.W.(2d) 20), and made provisions for taking the scholastic census.

Article 2816, R.C.S., 1925, provides that each year between March 1st and April 1st a census trustee "shall take a census of all children that will be over seven and under 18 years of age on the first day of the following September, and who are residents of the school district on said first day of April.  Article 2902, R.C.S., 1925, as amended 1929, lowers the scholastic age from over seven to over six.  He is required to visit each home and by actual observation enumerate the children and it is his duty to require the parent, guardian or person having control of the child to subscribe and swear to the information given on the census form, which includes the residence and date of birth of the child.  Article 294, Penal Code, imposes a fine of not less than five nor more than ten dollars upon conviction of any person having custody of the child who refuses to give the necessary information or make oath.

By Article 2817, R.C.S., 1925, the census trustee is required to prepare census rolls and a summary of his rolls and "he shall make oath to all his rolls and summaries, and to the faithful and accurate discharge of his duties, and deliver said rolls, with the forms arranged in alphabetical order, to the county superintendent," on or before May first next after his appointment.  (Art. 2817a, V.T.C.S., 1925).  Article 294a, Vernon's Penal Code, provides that any census trustee who "shall wilfully make any false report in his rolls or summaries shall be guilty of false swearing and shall be punished as prescribed by law for that offense."  It is the duty of the county superintendent to report any violation of duty to the grand jury of the county at its next session after discovering such breach of duty.

When the rolls and summaries are delivered to the county superintendent he is directed to file the same and preserve them in his office for three years.  It is also his duty to prepare consolidated rolls.  We quote from Article 2819, R.C.S., 1925, further defining his duties:

"In making these consolidated rolls, he shall scrutinize carefully the work of the census trustee, and shall have power to summon witnesses, take affidavits and correct any errors he may find in any census trustee's rolls, and he shall carefully exclude all duplicates. If he deems it necessary he may reject any roll, and appoint another census trustee to take the census of the district, in which case he shall not approve the warrant to pay the census trustee whose work has been rejected. When the county superintendent has prepared his consolidated census rolls, one for each race, he shall make a duplicate of each, and he shall make affidavit to the correctness of both originals and duplicates. The originals he shall, on or before July first, forward to the State Superintendent, and the duplicates shall be filed with the county clerk and become permanent records of his office. The county superintendent shall forward with his consolidated rolls an abstract on the prescribed form, under oath, showing the number of children of each race, of the different years of school age, and the total number of children of each race, and the total of both races in his county. In making his consolidated rolls and in investigating the work of any census trustee, the county superintendent shall refer to the forms and rolls of previous years, when necessary, and they shall be carefully preserved for this purpose."

Article 2820, R.C.S., 1925, defines the duties of the State Superintendent of Public Instruction as follows:

"The State Superintendent shall have authority to investigate the census of any county, to correct errors, and in extreme cases when he believes gross errors have occurred or that fraud has been practiced, he may, with the approval of the State Board, reject any county roll and require the census of the county to be retaken."

Articles 2656, 2657, 2663, and 2665, R.C.S., 1925, as amended, also pertain to the duties of the State Superintendent and the apportionment of the available school fund.

The State Superintendent is authorized by Article 2820, quoted above, to investigate the census reports and to correct errors, and in so doing we think he may properly refer to and make comparison with the census rolls of prior years which are a part of the records of his office. Referring to the

examples cited by you, it is apparent that children who were eight or nine years old on the first day of September, 1929, would be in excess of eighteen years of age on September 1st, 1940, and there is prima facie an error or illegal entry on the census roll which requires correction. At times the County superintendent concurs in the exceptions taken by your department but you are concerned with the instances in which the county officials challenge the ruling of the State Department and present additional affidavits and evidence in support of the eligibility of the child, notwithstanding the sworn records on file in your office show such child to be in excess of the scholastic age and that the particular district and county has received eleven full annual per capita apportionments on such child. In such cases the various affidavits and representations presented to you after such controversy arises are not necessarily controlling. In considering whether there are errors in the census of the nature mentioned above, it is necessary for the State Superintendent to determine as a fact the age of the child in question. You may have a consecutive line of affidavits on file in your office as a part of your official records which are sought to be impeached by representations, in many instances by the same individuals who originally swore the child was of a different age in order to secure state money for previous years. When such conflicts arise it is our opinion that the State Superintendent may consider all the facts and circumstances, including prior reports and official records on file in your office, and if upon due consideration you find that the child is over-age, that is an error to be corrected, and it becomes the duty of the State Superintendent to correct the roll and refuse to certify an apportionment upon such illegal enumeration. The holdings of the courts on questions of a similar nature indicate that when the State Superintendent has made his finding of fact, such finding will be sustained if there is substantial evidence to support the same. Under certain circumstances set out in Article 2820 the entire roll might be rejected and the census retaken.

It is our opinion that the procedure outlined in your request is one which may be followed by your department in investigating and correcting errors in the scholastic census.

APPROVED DEC 20, 1940  
/s/ Grover Sellers  
FIRST ASSISTANT ATTORNEY GENERAL  
APPROVED: OPINION COMMITTEE  
BY: BWB, CHAIRMAN  
CCC:N:wb  

Yours very truly  
ATTORNEY GENERAL OF TEXAS  
By /s/ Cecil C. Cammack  
Cecil C. Cammack, Assistant